UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| John David Eberlein, <br><br> Plaintiff, <br><br> v. <br><br> The Standard Fire Insurance Company, d/b/a The Travelers Companies <br><br> Defendant. | Case No. 20-cv-01725 (SRN/DTS) <br><br><br> **ORDER** |

Frederick J. Goetz, Goetz & Eckland PA, 615 First Avenue Northeast, Suite 425, Minneapolis, MN 55413, for Plaintiff.

Brian William Nelson and Michael R. Cashman, Hellmuth & Johnson, PLLC, 8050 West Seventy-Eighth Street, Edina, MN 55439, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on cross-motions for summary judgment filed by the parties. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment [Doc. No. 13] and **GRANTS** Defendant's Cross-Motion for Summary Judgment [Doc. No. 21].

**I.   BACKGROUND**

In this insurance coverage litigation, Plaintiff John Eberlein seeks excess underinsured motorist benefits from his insurer, The Standard Fire Insurance Company ("Standard"), for injuries sustained in a motorcycle accident. On August 15, 2019, a negligent motorist collided with Eberlein's 2011 Yamaha motorcycle, resulting in severe

1

injuries requiring extensive medical care. (Compl. [Doc. No. 1-1], at ¶¶ 14, 16-18.[1]) The motorist's vehicle was insured by the State Farm Insurance Company. (*Id.* ¶ 19.) Eberlein's motorcycle was insured under a policy issued by Safeco Insurance, which provided underinsured motorist benefits. (*Id.* ¶ 15.) Eberlein also held a policy issued by Standard, which insured four of Eberlein's vehicles—a 2005 Mazda, a 2013 Chevrolet, a 2003 Subaru, and a 2001 Toyota—but not the Yamaha motorcycle. (Decl. of Brian W. Nelson ("Nelson Decl.") [Doc. No. 24], Ex. B ("Standard Policy"), at 10.)

The motorist settled Eberlein's claims against him, exhausting the State Farm policy's coverage limits. (Compl. ¶ 19; Decl. of Frederick J. Goetz ("Goetz Decl.") [Doc. No. 16], Ex. 1.) Eberlein thereafter obtained $50,000 in underinsured motorist benefits from Safeco, exhausting the coverage limits applicable under that policy as well. (Compl. ¶¶ 15, 20; Goetz Decl., Ex. 3.)

Eberlein then sought excess underinsured motorist benefits under the Standard policy. The policy's declarations page states that "[i]nsurance is provided only where a premium entry is shown for the coverage." (Standard Policy at 10.) Although the policy insured four of Eberlein's vehicles, Eberlein's motorcycle is not listed on the policy's declarations page, and no premium entry is shown for that vehicle. (*Id.* at 10-11.) The policy's underinsured motorist coverage section, under the heading "Insuring Agreement," provides:

---

[1] Citations to the Complaint reference allegations undisputed by Standard, unless otherwise noted.

> A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an . . . "underinsured motor vehicle" because of "bodily injury":
>
>> 1. Sustained by an "insured" and
>>
>> 2. Caused by an accident.
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the . . . "underinsured motor vehicle". . . .

(*Id.* at 28.) Under the heading "Exclusions," the policy contains an owned-but-not-insured vehicle exclusion:

> A. We do not provide coverage under this Coverage Section for "bodily injury" sustained by any "insured":
>
>> 1. While "occupying" any motor vehicle owned by that "insured" which is not insured for this coverage. . . .

(*Id.*) Finally, under the heading "Other Insurance," the policy provides:

> B. If an "insured" sustains "bodily injury" while:
>
>> 1. "Occupying" a vehicle: . . .
>>
>>> b. Owned by you or any "resident relative" which is insured under one or more separate policies providing . . . Underinsured Motorists Coverage; . . .
>>
>> the following priorities apply:
>
> | **FIRST PRIORITY** | The policy affording . . . Underinsured Motorists Coverage to the vehicle the "insured" was "occupying" at the time of the accident. |
> |---|---|
> | **SECOND PRIORITY** | Any policy affording . . . Underinsured Motorists Coverage to the "insured" as a named insured . . . . |

3

>D. Where there is applicable insurance available under the first priority:
>
>>1. The limit of liability applicable to the vehicle the "insured" was "occupying", under the policy in the first priority, shall first be exhausted; and
>>
>>2. The maximum recovery under all policies in the second priority shall not exceed the amount by which the highest limit for any one vehicle under any one policy in the second priority exceeds the limit applicable under the policy in the first priority.

(*Id.* at 30.)

After Standard denied Eberlein's claim, Eberlein brought this action seeking second-priority or excess underinsured motorist benefits under the policy. The parties filed cross-motions seeking summary judgment regarding whether Eberlein is entitled to such benefits. Those motions are now before the Court.

## II.   DISCUSSION

### A.   Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it may affect the outcome of the lawsuit." *TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, 812 F.3d 701, 707 (8th Cir. 2016). And a factual dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, the Court must view the evidence and any reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the moving party bears the burden of establishing the lack of a genuine issue of fact, the party opposing summary judgment may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation marks omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Moreover, summary judgment is properly entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Where, as here, the record is undisputed and "the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Aucutt v. Six Flags Over Mid-Am., Inc.*, 85 F.3d 1311, 1315 (8th Cir. 1996) (citing *Crain v. Board of Police Comm'rs*, 920 F.2d 1402, 1405–06 (8th Cir. 1990)).

**B.    Analysis**

"Federal courts sitting in diversity apply state substantive law." *Morgantown Mach. & Hydraulics of Ohio, Inc. v. Am. Piping Prod., Inc.*, 887 F.3d 413, 415 (8th Cir. 2018) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The interpretation of an insurance policy is a question of law. *Midwest Fam. Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013). Under Minnesota law, courts interpreting insurance contracts "must ascertain and give effect to the intentions of the parties as reflected in the terms of the insuring contract." *Id.* (quotation omitted). The policy "must be construed as a whole, and unambiguous language must be given its plain and ordinary meaning." *Id.* (quotation omitted). Policy language is ambiguous if it is "susceptible to two or more reasonable

interpretations." *Id.* (citation omitted). If a term is ambiguous, the ambiguity must be resolved against the insurer, and the term must be construed "in favor of providing coverage to the insured." *Eng'g & Const. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 705 (Minn. 2013).

But the Court cannot "construe individual words or phrases in insurance policies in isolation." *Id.* at 706. Rather, the Court must "read the policy as a whole, and . . . 'fastidiously guard against the invitation to create ambiguities where none exist.'" *Id.* (citations omitted). Additionally, the Court broadly construes policy provisions that affirmatively grant coverage, and narrowly construes provisions restricting coverage. *Gen. Cas. Co. of Wisconsin v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 575 (Minn. 2009). Although Eberlein bears the burden of demonstrating that his accident triggered underinsured motorist coverage under the policy, Standard bears the burden of demonstrating the applicability of any coverage exclusions. *Wolters*, 831 N.W.2d at 636.

The Court begins its analysis with the policy's "Insuring Agreement." Under that provision, Standard contracted to "pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an . . . 'underinsured motor vehicle' because of 'bodily injury': 1. Sustained by an 'insured' and 2. Caused by an accident," where that accident "arise[s] out of the ownership, maintenance or use of the . . . 'underinsured motor vehicle.'" (Standard Policy at 28.) It is undisputed that Eberlein is the named insured under the Standard policy, and that his injuries were caused

6

by a motor vehicle accident involving an underinsured motorist. The Court finds, therefore, that the accident triggered the policy's underinsured motorist coverage.[2]

Standard argues that coverage cannot exist because Eberlein did not pay Standard a premium for underinsured motorist benefits for his motorcycle. To be sure, the policy's declarations page states that "[i]nsurance is provided only where a premium entry is shown for the coverage," and there is no premium shown for the motorcycle—which was insured under a policy issued by Safeco. (*Id.* at 10-11; Compl. ¶ 15.) But Eberlein *did* pay Standard for underinsured motorist coverage for four other vehicles. The question in this case is whether the coverage Eberlein purchased for those vehicles provides excess underinsured motorist benefits for the accident involving Eberlein's motorcycle. Because the policy's "Insuring Agreement" does not limit coverage to accidents involving a vehicle for which Eberlein paid a premium, the Court is not persuaded by Standard's argument on this point.[3]

---

[2] Eberlein also argues that the policy's "Other Insurance" provision affords coverage for his accident. The "Other Insurance" provision states that where the insured sustains bodily injury while occupying a vehicle owned by the insured, which is insured under one or more policies providing underinsured motorist coverage, the limit of liability under policies of the "first priority" must be exhausted before policies of the "second priority" pay benefits. (Standard Policy at 30.) The provision defines "second priority" policies to include "[a]ny policy affording . . . Underinsured Motorists Coverage to the 'insured' as a named insured." (*Id.*) Noting that the Standard policy does grant underinsured motorist benefits to Eberlein as a named insured with respect to the four vehicles listed on the policy's declarations page, Eberlein reads the "Other Insurance" provision as an affirmative grant of "second priority" underinsured motorist benefits. However, the "Other Insurance" provision serves only to coordinate coverage where multiple policies affording underinsured motorist benefits to an insured are triggered by an accident. It is not itself a grant of coverage. Rather, the policy's "Insuring Agreement" governs when coverage under the policy is triggered.

[3] Notably, Standard conceded at oral argument that had Eberlein not owned the motorcycle, Standard would be obligated to pay underinsured motorist benefits

7

Having found that the accident triggered underinsured motorist coverage under the Standard policy, the Court next considers whether any of the policy's exclusions apply. Standard relies on the policy's owned-but-not-insured vehicle exclusion:

> A. We do not provide coverage under this Coverage Section for "bodily injury" sustained by any "insured":
>
>> 1. While "occupying" any motor vehicle owned by that "insured" which is not insured for <u>this coverage</u>. This includes a trailer of any type used with that vehicle.

(Standard Policy at 28 (emphasis added).) Standard argues that because Eberlein sustained his injuries while occupying a motorcycle that was not listed as an insured vehicle in the policy's declarations, the exclusion precludes coverage. Eberlein contends that the words "this coverage" unambiguously refer to underinsured motorist coverage generally, and that because Eberlein obtained underinsured motorist coverage for his motorcycle from Safeco, the motorcycle is not one "owned" but "not insured for this coverage." Eberlein notes that other cases interpreting owned-but-not-insured vehicle exclusions have involved exclusions that specifically applied to owned vehicles "not insured for this coverage *under this policy*." *See, e.g.*, *Gay v. Trumbull Ins. Co.*, No. CV-13-02269 (PHX/DGC), 2014 WL 4071659, at *1 (D. Ariz. Aug. 18, 2014), *aff'd*, 661 F. App'x 505 (9th Cir. 2016) (emphasis added).[4]

---

notwithstanding the fact that the motorcycle was not listed on the policy's declarations page. Thus, the fact that Eberlein's motorcycle was not listed on the policy's declarations page is not alone sufficient to preclude coverage under the policy.

[4] Both parties argue that the court's analysis in *Gay* supports their position. There, the court—applying Minnesota law—considered whether an owned-but-not-insured vehicle exclusion barred underinsured motorist coverage on facts similar to this case.

The Court finds that Eberlein's interpretation of the owned-but-not-insured vehicle exclusion is not reasonable. Although the exclusion does not include the words "under this policy," the term "this coverage" unambiguously refers to coverage under Standard's policy, not underinsured motorist coverage in general. The Court cannot read the term in isolation, but must consider it within the context of the entire exclusion. *Eng'g & Const. Innovations, Inc.*, 825 N.W.2d at 706. In the immediately preceding clause, the exclusion states: "[w]e do not provide coverage under this Coverage Section"—that is, the policy's underinsured motorist coverage section. The exclusion's reference to "this coverage," considered together with that clause, unambiguously refers to the underinsured motorist coverage section of Standard's policy.

Moreover, where Standard intended to refer to underinsured motorist coverage generally—rather than the specific coverage provided by its policy—it used significantly different language. The policy's "Other Insurance" provision serves to coordinate coverage where multiple underinsured motorist policies cover the same accident. Pursuant to that

---

However, the court's analysis focused on whether the exclusion was enforceable under Minnesota's No-Fault Act, and whether the term "motor vehicle" included motorcycles. The court did not examine the interpretive question presented here: whether "this coverage" refers to underinsured motorist coverage generally, or whether it refers specifically to the policy at issue.

The Court also notes that, unlike the policyholder in *Gay*, Eberlein does not argue that "motorcycles" are not "motor vehicles" as that term is used in Standard's owned-but-not-insured vehicle exclusion. (Mem. in Supp. of Pl.'s Mot. for Summ. J. [Doc. No. 15], at 19 ("[I]n interpreting the exclusion at issue here, the Court should give the term 'motor vehicle' as used in the exclusion at issue its usual and accepted meaning which includes motorcycles.").)

9

provision, benefits are available under "second-priority" policies only once the insured exhausts the liability limits applicable under "first-priority" policies. (Standard Policy at 30.) First-priority policies are those "affording . . . Underinsured Motorists Coverage to the vehicle the 'insured' was 'occupying,'" while second-priority policies include "[a]ny policy affording . . . Underinsured Motorists Coverage to the 'insured.'" (*Id.*) That language—"policy affording . . . Underinsured Motorists Coverage"—constitutes a clear reference to underinsured motorist benefits generally, as opposed to coverage specifically available under Standard's policy. By contrast, the owned-but-not-insured vehicle exclusion's simple reference to "this coverage," in a sentence immediately following a reference to "coverage under this Coverage Section," cannot be reasonably construed to refer to underinsured motorist coverage generally.

The Court's reading of the exclusion is further supported by *New London County Mutual Insurance Co. v. Fontaine*, 45 A.3d 551 (R.I. 2012). There, the Supreme Court of Rhode Island considered the precise interpretive question at issue here—albeit applying Rhode Island law rather than Minnesota law.

> In this case, defendants endeavor to distinguish the "owned but not insured" exclusion at issue from those considered in the aforementioned cases based on the language "this coverage" employed in the provision. The defendants contend that, unlike the exclusions at issue in other cases, the exclusion here is lacking the qualifying phrase "under this policy." . . . The defendants maintain that the term "this coverage" equates to UM coverage in general, and that because the term is not qualified by the phrase "under this policy," such coverage is not specific to the UM coverage under the NLC policy. Thus, defendants argue, because Mr. Fontaine's motorcycle *was* covered under the Foremost policy, their claim is not excised from UM coverage under the NLC policy by the "owned but not insured" exclusion . . . .

> Viewing the NLC policy in its entirety, and affording the words at issue their plain and ordinary meaning in the way that would be understood by "the ordinary reader and purchaser," we conclude that the "owned but not insured" exclusion applicable in this case is not ambiguous. We are convinced that aligning with defendants' proposed interpretation—that the term "this coverage" refers to UM coverage in general—conceives an ambiguity in the provision where none exists. The exclusion is positioned within the policy in Part C, the section addressing "Uninsured Motorists Coverage," and within the clearly marked segment titled "EXCLUSIONS." The use of the words "this coverage" refers to the UM coverage offered by the NLC policy as discussed in Part C—not to UM coverage in general. . . .
>
> "The purpose of [an 'owned but not insured'] exclusionary clause is twofold: '(1) to prevent an insured from receiving coverage on all household cars or another uninsured car of the insured by merely purchasing a single policy, and (2) to provide coverage to the insured when engaged in the infrequent use of non-owned vehicles.'" A reading of the applicable "owned but not insured" exclusion in the NLC policy as proffered by defendants frustrates this legitimate purpose by increasing the risk insured by an insurer without allowing for a corresponding increase in the premium charged. Nor is such an increase in risk capable of actuarial calculation. The resultant imposition of such great uncertainty upon the insurer reveals defendants' proposed interpretation as one that renders an unreasonable result.

*Id.* at 559–61 (citations omitted). The Court finds *Fontaine's* reasoning persuasive. The term "this coverage"—positioned, as it is, in the coverage section devoted to underinsured motorist coverage under Standard's policy, and immediately following a reference to "this Coverage Section"—unambiguously refers to underinsured motorist coverage provided by Standard's policy. Further, Eberlein's proffered interpretation conflicts with the exclusion's role, and would impose significantly greater (and less predictable) liability on the insurer than it contracted for.

Applying the Court's construction of the owned-but-not-insured vehicle exclusion, the Court finds that the exclusion bars coverage in this case. Eberlein's motorcycle is a motor vehicle owned by him but not insured under the policy. The motorcycle is not

11

identified as an insured vehicle in the policy's declarations, and Eberlein did not pay a premium for that vehicle. (Standard Policy at 10.) Consequently, although Eberlein's accident falls within the policy's "Insuring Agreement," and therefore triggered the policy, the exclusion precludes excess underinsured motorist benefits.

Finally, the Court notes that Minnesota's No-Fault Act does not require Standard to pay underinsured motorist benefits in this case notwithstanding its policy language. The Act does not require insurers to offer minimum underinsured motorist benefits for motorcycles. Minn. Stat. § 65B.49, subd. 3a(8) ("The uninsured and underinsured motorist coverages required by this subdivision do not apply to bodily injury of the insured while occupying a motorcycle owned by the insured."). With respect to other motor vehicles, the Act expressly permits an owned-but-not-insured vehicle exclusion. Minn. Stat. § 65B.49, subd. 3a(7) ("The uninsured and underinsured motorist coverages required by this subdivision do not apply to bodily injury of the insured while occupying a motor vehicle owned by the insured, unless the occupied vehicle is an insured motor vehicle."). Thus, as Eberlein concedes, "the No-fault Act does not require excess UIM coverage in the circumstances presented in this case." (Pl.'s Reply Mem. [Doc. No. 28], at 18.)

### III.   CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment [Doc. No. 13] is **DENIED**, and Defendant's Cross-Motion for Summary Judgment [Doc. No. 21] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 20, 2021                                        <u>s/Susan Richard Nelson</u>
                                                                                                        SUSAN RICHARD NELSON
                                                                                                        United States District Judge